UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CENTURY SURETY COMPANY,

        Plaintiff,                         Memorandum and Order
                                                   09-cv-1040
    - against -

ODYSSEY MECHANICAL CORP.,
TRUMBULL EQUITIES, LLC, and
TOWER INSURANCE COMPANY OF
NEW YORK

        Defendants.
------------------------------------------------------------x
GLASSER, United States District Judge:

        Plaintiff Century Surety Company ("Century") filed this declaratory judgment action, pursuant to 28 U.S.C. § 2201, against defendants Odyssey Mechanical Corp. ("Odyssey"), Trumbull Equities, LLC ("Trumbull") and Tower Insurance Company of New York ("Tower") in connection with a fire that occurred on November 22, 2008 at Trumbull's commercial property. Century seeks a judgment declaring that it is not obligated to defend against a suit by defendants or compensate any parties for fire damage allegedly caused by the actions of its policy-holder, Odyssey, because those actions are not covered by Odyssey's insurance policy. Century now moves for summary judgment. Defendant Tower opposes the motion, arguing the Court lacks subject matter jurisdiction because there is no case or controversy. For the following reasons, the Plaintiff's motion is GRANTED.

1

## BACKGROUND

The following facts are undisputed, unless otherwise noted. In 2008, Odyssey purchased commercial general liability insurance, Policy CCP54782, from Century, effective for the period May 9, 2008 to May 9, 2009 (the "Policy"). Plaintiff's Statement of Material Facts Pursuant to Rule 56.1 ("Pl.'s R. 56.1") ¶ 1; Declaration of Copernicus T. Gaza ("Gaza Decl.") Ex. A. Under "business description," the policy listed "HVAC INST./REPAIR." Pl. R. 56.1 ¶ 2; Gaza Decl. Ex A at 3. "HVAC" is an industry abbreviation for "Heating, Ventilation and Air Conditioning." See Gaza Decl. Ex. A at 9 (classifying the business as "Heating or Combined Heating and Air Conditioning Equipment"). Under "specifically covered operations," the policy stated "Contractor [the insured, Odyssey] Doing HVAC Installation and Repair Work." Pl.'s R. 56.1 ¶ 6; Gaza Decl. Ex A at 9. Under the calculation for "Premium" the business was classified as "Heating or Combined Heating and Air Conditioning Equipment – dealers or distributors only." Pl.'s R. 56.1 ¶ 5; Gaza Decl. Ex A. at 9.

In the fall of 2006, Trumbull contracted with Odyssey to install a sprinkler system in Trumbull's property at 31-10 37th Avenue, Long Island City, New York (the "37th Ave Building"), a 5-story commercial building. Pl.'s R. 56.1 ¶¶ 15-18; Gaza Decl. Ex. G. As part of that installation, Odyssey hired a subcontractor, New York City Sprinklers[1], to provide the labor and secure the permits for the work. Pl.'s R. 56.1 ¶¶ 15 & 17; Gaza Decl. Ex. G.

---

[1] There is some confusion in the record as to the name of the subcontractor corporation. Odyssey originally referred to the subcontractor as "New York Sprinkler Co. (NYSC)" Pl.'s R. 56.1 ¶ 15; Gaza Decl. Ex. G. However Plaintiff states the corporation is called either "New York City Sprinklers" or "New York City Sprinkler Systems Corp." See Mem. Of Law at 8, n. 3.

2

On November 22, 2008 a fire broke out in Trumbull's Long Island City property, causing damage ("the fire damage"). Pl.'s R. 56.1 ¶¶ 7, 12. It is alleged that the sprinkler system installed by Odyssey failed to activate to extinguish the fire, Pl.'s R. 56.1 ¶¶ 7-8 & 14; Gaza Decl. Ex. B, C & E, although the reasons for that failure are in dispute. Shortly after the fire on December 3, 2008, Trumbull sent a letter to Odyssey and Century, stating that Trumbull "fully intend to hold Odyssey Mechanical liable for all damages sustained as a result of the recent fire at the premises due to the malfunctioning of the sprinkler system. By copy of this letter we are notifying your carrier of the aforesaid claim." Pl.'s R. 56.1 ¶ 7; Gaza Decl. Ex. B. On December 9, 2008, Francis Manfredi, an attorney acting for Tower, contacted Century by telephone and repeated the allegation that Odyssey installed a sprinkler system in the 37th Ave Building that did not function during the fire. Pl.'s R. 56.1 ¶ 8. Tower, as Trumbull's insurer, claims a right of subrogation against Odyssey. Answer to Amended Complaint, dated May 18, 2009, ¶ 10. Odyssey confirmed that it had installed a sprinkler system at the building. Pl.'s R. 56.1 ¶ 9.

Subsequently, both Century and Tower hired independent investigators to examine the cause of the fire. Pl.'s R. 56.1 ¶¶ 11-18; Gaza Decl. Ex. E & G. The investigation indicated that the fire was caused by sparks from a tenant's welding torch. See Gaza Decl. Ex E & G. During the investigation, Odyssey produced an invoice it issued to Trumbull dated September 19, 2006. Pl.'s R. 56.1 ¶ 16; Gaza Decl. Ex. G. The invoice stated "INSTALL & FURNISH SPRINKLER SYSTEM PER CODE." Pl.'s R. 56.1 ¶ 16, Gaza Decl. Ex G. Odyssey also produced a subcontract between Odyssey and New

3

York City Sprinklers for the installation of sprinkler heads, dry valves, alarm valves, Siamese connections, and necessary work permits. Pl.'s R. 56.1 ¶ 17; Gaza Decl. Ex G.

On March 11, 2009, Century sent a letter to Odyssey in which Century stated that it would neither defend any claim nor cover any losses arising from the fire and Odyssey's installation of the sprinkler system because the losses were not part of the "HVAC installation and repair work" covered under the Policy. Pl.'s R. 56.1 ¶¶ 19-20; Gaza Decl. Ex. H. On March 12, 2009, Century filed this action seeking a declaratory judgment. No underlying action has been filed by Trumbull and Tower against Odyssey or Century. They therefore oppose the relief sought on the basis there is no case or controversy sufficient to confer jurisdiction on the Court.

## JURISDICTION

Diversity of citizenship, which is not disputed, provides a basis for jurisdiction. See 28 U.S.C. § 1332(a)(1); Amended Complaint, dated March 19, 2009, ¶ 4-6. The issue presented is whether the claimed absence of a case or controversy deprives the Court of subject matter jurisdiction.

## DISCUSSION

### I.     Standard of Review

"In determining a motion for summary judgment that is filed in the context of a declaratory judgment action, the same standard is applied as in any other action." United States v. State of New York, 3 F. Supp. 2d 298, 307 (E.D.N.Y. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as

4

to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).  As an initial matter, the moving party has the burden of demonstrating that no genuine issue of material fact exists. Matsushita, 475 U.S. at 586.  Once the movant points to the absence of an issue, the non-moving party cannot "rest upon the mere allegations or denials" in its pleadings but must produce evidence of a genuine issue of material fact.  See Fed R. Civ. P. 56(e).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Credibility assessments and choices between conflicting versions of events, when material to the inquiry, are determinations that the Court must leave for a jury.  See Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).  The Court is compelled to draw all reasonable inferences in favor of the nonmoving party, Matsushita, 475 U.S. at 586, and a genuine issue exists if a reasonable jury could find in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II.     Declaratory Relief

In relevant part, the Declaratory Judgment Act ("DJA") provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  However, actions for declaratory judgment still must meet "case or controversy" requirements and the party seeking declaratory judgment has the burden to prove subject matter jurisdiction.  E.R. Suibb & Sons, Inc. v. Lloyd's & Co., 241 F.3d

154, 177 (2d Cir. 2011).  A court cannot adjudicate conjectural or hypothetical cases or controversies.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).  "The disagreement . . . must have taken a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on its adversaries, and some useful purpose to be achieved in deciding them."  Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244, 73 S.Ct. 236, 97 L.Ed. 291 (1952).  The question to be asked is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment."  Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 17 (2d Cir. 1993) (citing Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir.), cert. denied, 501 U.S. 1218, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991)).  "To maintain jurisdiction for declaratory relief, plaintiffs must show that they meet the above prerequisites at the time the case is heard."  U.S. Underwriters Ins. Co. v. Kum Gang Inc., 443 F. Supp. 2d 348, 352 (E.D.N.Y. 2006) (citing Golden v. Zwickler, 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969)).

      The DJA expressly confers discretion upon the district court to decide whether it will entertain jurisdiction.  Apotex Inc. v. Sanofi-Synthelabo et. al., 386 F. Supp. 2d 549, 551 (S.D.N.Y. 2005).  When considering whether to exercise that discretion, the Second Circuit instructs district courts to consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  Duane Reade Inc. v. St

6

Paul Fire and Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005) (citing Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969)). If either objective will be achieved, a failure to entertain the action would be an error. Broadview Chem. Corp., 417 F.2d at 1001.

### III.     Subject Matter Jurisdiction

As a threshold matter, Defendant Tower argues that because it has not yet filed a lawsuit against Odyssey or Century, there is no justiciable case or controversy and this court lacks subject matter jurisdiction. While Tower is correct that federal courts "generally decline to award declaratory relief in indemnification actions, especially before any underlying suit has been filed," Solow Bldg. Co., LLC v. ATC Associates, Inc., 388 F. Supp. 2d 136 (E.D.N.Y. 2005), the determination "[w]hether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." Kidder, Peabody & Co. Inc. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991). The absence of an underlying claim is not automatically fatal to Century's action. "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather courts should focus on the practical likelihood that the contingencies will occur." Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2d cir. 1992). See also Millennium Capital Markets LLC v. U.S. Nat'l Leasing Corp., No. 97-cv-8397, 1999 WL 311923, at *6 (S.D.N.Y. May 13, 1999) (dismissing declaratory judgment claim but noting it could be renewed if injured parties "instituted *or have threatened to institute* legal action against plaintiffs").

7

In opposing Century's action for declaratory judgment, Tower relies upon two cases from this court denying declaratory judgment in indemnification actions, <u>Charter Oak Fire Insurance Co. v. Bolding</u>, No. 08-cv-02632, 2009 WL 3246116 (E.D.N.Y. Oct. 1, 2009) and <u>Solow Bld. Co., LLC v. ATC Associates, Inc.</u>, 388 F. Supp. 2d 136 (E.D.N.Y. 2005). However, the facts of those cases differ in critical respects from the facts of this case. In <u>Solow</u>, the plaintiff landlord sought indemnification from a tenant against any future tort claims by any third party arising from the tenant's asbestos abatement work. 388 F.Supp 2d. at 137. After more than three years of discovery, no injured third party had been identified and the court noted that even if an injured party were identified, there would be no legal basis for a claim against the plaintiffs. <u>Id.</u> at 140. Therefore, the court found it lacked subject matter jurisdiction, based on the fact that "[t]here is no underlying lawsuit, no threat of a suit, and no indication so far that anyone was even injured." 388 F.Supp 2d. at 139. Similarly, in <u>Charter Oak Fire Insurance Co.</u>, the injured party never contacted the insurance company, filed no claim, filed no lawsuit, and made no opposition to Charter Oak's declaratory judgment action. 2009 WL 3246116, at *2. Based on the lack of adverse legal interests, the court dismissed for lack of subject matter jurisdiction. <u>Id.</u> at *4-5.

Here, Trumbull placed Odyssey and Century on notice of claim for the fire damage, premised on Odyssey's installation of the sprinkler system. Pl.'s R. 56.1 ¶ 7; Gaza Decl. Ex. B. This claim was repeated by Tower via telephone. Pl.'s R. 56.1 ¶ 8. These communications clearly constituted a "claim," as defined in the Policy. <u>See</u> Gaza Decl. Ex. A.II, § VI(4) ("'Claim' means a demand against any insured seeking a remedy and alleging liability or responsibility on the part of any insured for compensatory

8

damages."). The Policy not only obliges Century to bear the costs of defending against litigation but also obliges Century to bear the costs of any investigation or settlement of a claim. See Gaza Decl. Ex. A at 9. ("We will pay, with respect to any 'claim' we investigate or settle . . . all expenses we incur."). Based on Century's communication to Odyssey on December 11, 2008, it is clear that Century took these claims seriously. See Gaza Decl. Ex. D. Century immediately hired experts to investigate the fire and prepare reports on the circumstances, cause, and origin of the fire damage. Pl.'s R. 56.1 ¶ 11-19. The defendants have not abandoned their claim against Odyssey and Tower opposes Century's motion for summary judgment. In light of all these facts, the parties are clearly adverse and Century's duty to defend is sufficiently immediate and real to confer subject matter jurisdiction upon this Court. Additionally, judgment would serve the objective set out in Duane Reade of "offer[ing] relief from uncertainty" to Century regarding its ongoing liability for Tower's claim. 411 F.3d at 389.

## IV. Liability Under the Policy

Century seeks a judgment that it is not obliged to defend or indemnify Odyssey on the basis that: 1) all of the defendants' claims are derived from Odyssey's work installing a sprinkler system and; 2) as a matter of law, the installation of a sprinkler system is beyond the scope of the Policy. The Court begins by examining whether Century has established that the claims are derived from work on the sprinkler system before turning to the scope of the Policy.

A. Odyssey's Work at the 37th Avenue Building

Even drawing all reasonable inferences in favor of the defendants, Century has met its burden of establishing that the defendants' claims are derived from Odyssey's installation of a sprinkler system at the 37th Ave Building. This is the only basis for liability set out in the defendants' claim letter and telephone call and the sole basis for liability contained in the investigators' reports. The invoices and other evidence Odyssey produced to Century establish that only sprinkler work was performed at the 37th Avenue Building. Although Tower speculates in its memorandum of law that there might be unknown theories of liability against Odyssey that might fall within the insurance policy, Tower presents no evidence that Odyssey ever performed any work at the 37th Ave Building, other than installing a sprinkler system. A summary judgment motion cannot be defeated on the basis of "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991); see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (citation omitted)); Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). "Proof of negligence in the air, so to speak, will not do." Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 341, 162 N.E. 99, 99 (N.Y. 1928) (quoting Frederick Pollock, The Law of Torts 455 (11th ed.1920)).

B. Scope of the Policy

The parties do not dispute that New York law applies to the Policy. "The New York approach to the interpretation of contracts of insurance is 'to give effect to the intent of the parties as expressed in the clear language of the contract.'" <u>Mount Vernon Fire Ins. Co. v. Belize N.Y.</u>, 277 F.3d 232, 236 (2d Cir. 2002) (quoting <u>Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.</u>, 55 F.3d 114, 115 (2d Cir. 1995)). "Unambiguous terms are to be given their plain and ordinary meaning, and ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract." <u>McCarthy v. Am. Int'l. Group., Inc.</u>, 283 F.3d 121 (2d Cir. 2002).

The policy contained an endorsement and an exclusion, both of which are relevant to the determination of whether the Policy applies to the installation of a sprinkler system. Where a policy contains an endorsement, "[u]nder New York law, an endorsement must be read in conjunction with the entire policy, and the words of the policy remain in full force and effect except as modified by the endorsement." <u>U.S. Underwriters</u>, 443 F. Supp. 2d at 356 (citing <u>Cty of Columbia v. Cont'l Ins. Co.</u>, 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 634 N.E.2d 946 (1994)).

Similarly, it is well-settled that "exclusions from insurance policy coverage are given strict construction." <u>Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.</u>, 19 F.3d 78, 81 (2d Cir. 1994). See also <u>Critchlow v. First UNUM Life Ins. Co. of America</u>, 378 F.3d 246 (2d Cir. 2004); <u>State of New York v. Blank</u>, 27 F.3d 783 (2d Cir. 1994). Policy exclusions are interpreted in a manner most beneficial to the insured. <u>MH Lipiner & Son, Inc. v. Hanover Ins. Co.</u>, 869 F.2d 685, 687 (2d Cir. 1989); see also <u>Miller v. Cont'l Ins. Co.</u>, 40 N.Y.2d 675, 678, 389 N.Y.S.2d 565 (1976) ("New York follows the "hornbook

11

rule that policies of insurance . . . are to be liberally construed in favor of the insured."). "The insurer bears the burden of proving that the exclusion applies, that it is stated in clear and unmistakable language, and is subject to no other reasonable interpretation." U.S. Underwriters, 443 F.Supp.2d at 356 (citing Cont'l Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 652, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993)).

By the terms of the Policy, Century agreed to defend and indemnify Odyssey against claims for bodily injury or property damage "to which this insurance applies." See Gaza Decl. Ex. A, § I(1)(a). The Policy applies "only if the 'bodily injury' and 'property damage' arises out of 'specifically covered operations'. . . ." Gaza Decl. Ex A., § I(1)(b). "Specifically covered operations" is defined in a "Specifically Covered Operations Endorsement," which states:

> The following work and operations are included within the definition of "specifically covered operations":
>
> CONTRACTOR DOING HVAC INSTALLATION AND REPAIR WORK
>
> Coverage for classifications, operations, or premises ***not*** shown above can only be covered if agreed to, in writing, by us as evidence by endorsement to this policy.

Gaza Decl. Ex. A.II (emphasis in original).

The Policy "Exclusions" repeats this limitation: "This insurance does not apply to: . . . . 'Bodily injury' or 'property damage' included in the 'products-completed operations hazard' and arising out of or resulting from any work or operations other than those necessary and incidental to your 'specifically covered operations.'" Gaza Decl. Ex. A at § (2)(bb). "Products-completed operations hazard" referred to injury or damage

12

occurring away from the policy-holder's premises. Id. Based on the endorsement and the exclusions, it is clear and unambiguous that the policy excluded work which was not "necessary and incidental" to the work of installing and repairing heating, ventilation, and air conditioning systems. No reasonable person could conclude that the installation of a building-wide sprinkler system, designed to extinguish fires, qualifies as heating and air-conditioning installation and repair work or that a sprinkler system is "incidental" to that work. Not only are these distinctly different and unrelated systems within a building, but the work is qualitatively different. The failure of fire-safety equipment carries risks that the failure of air conditioning does not.

"The duty to defend arises whenever the allegations . . . fall within the scope of the risks undertaken . . . regardless of how false or groundless those allegations might be." Stonewall Ins. Co. v. Nat'l Gypsum Co., No. 86 Civ. 9671, 1992 WL 123144, at *6 (S.D.N.Y. May 27, 1992) (quoting Seabord Sur. Co. v. Gillette Co., 64 N.Y .2d 304, 310 (1984) (citations omitted)). Only where the promisor can prove as a matter of law that the claimed injury is excluded by the contract will the duty to defend be abrogated." Travelers Prop. Cas. Corp. v. Winterthur Int'l., No. 02 Civ. 2406, 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002) (citing Physicians' Reciprocal Insurers v. Loeb, 738 N.Y.S.2d 68, 70 (2d Dept. 2002). "In contrast to the duty to defend, the duty to indemnify turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts." Id. at *6 (citing Stonewall, 1992 WL 123144, at *8).

All the evidence is patently clear that Odyssey's work at the 37th Avenue Building was limited solely to installing the sprinkler system. Despite having two years in which to conduct an investigation and discovery, defendants present no evidence to the

13

contrary. The probability that there will be further development of the facts regarding the nature of Odyssey's work is remote. As already discussed, any liability arising from installation of the sprinkler system is beyond the scope of the Policy. Consequently, Century has no duty to defend or indemnify Odyssey against any claims arising from the fire damage.

## CONCLUSION

The claim of liability against Century is neither conjectural nor hypothetical; the controversy is not fanciful. The judgment will serve the useful purpose of settling the legal issue involved and will relieve Century, the plaintiff, from uncertainty. To fail to exercise discretion to entertain jurisdiction would be an error. Broadview Chem. Corp., 417 F.2d at 1001. For the foregoing reasons, summary judgment is granted and a judgment entered, declaring that Century owes no duty under the Policy to defend or indemnify Odyssey with regard to any claim against Odyssey arising from the fire damage.

**SO ORDERED.**

Dated:      Brooklyn, New York
               September 27, 2011

                                                  /s/
                                            I. Leo Glasser, U.S.D.J.